CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 26 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LILLIE MATTOX. O/B/O X.T., a minor child, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:17CV00367 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| NANCY A. BERRYHILL, Acting ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security, ) | Senior United States District Judge |
| ) | |
| Defendant. ) | |

Lillie Mattox, the grandmother and legal guardian of X.T., filed this action challenging the final decision of the Commissioner of Social Security terminating the payment of child's supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(d).[1] Jurisdiction of this court is established pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g).

By order entered December 14, 2017, the court referred this case to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). On November 20, 2018, the magistrate judge submitted a report in which he recommends that the court affirm the Commissioner's final decision. Plaintiff has filed an objection to the magistrate judge's report, and the matter is now ripe for the court's consideration.

This court is charged with performing a de novo review of the magistrate judge's report and recommendation. See 28 U.S.C. § 636(b)(1). In the instant case, the court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff has not met the requirements for entitlement to benefits under the Act since December 3, 2014. If such substantial evidence exists, the final

---

[1] For purposes of consistency and clarity, X.T. shall hereinafter be referred to as the plaintiff in this case.

decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff was born in August of 2006 with a congenital right foot deformity, a right tibial deficiency, and an unstable right knee. (Tr. 341, 358). He underwent a "right through knee amputation" at Shriners Hospital for Children in Greenville, South Carolina on July 12, 2007. (Tr. 345). On February 5, 2008, the plaintiff's mother filed an application for child's supplemental security income benefits. On August 22, 2008, the plaintiff was found to be disabled as of February 5, 2008, based on the determination that the plaintiff's partial leg amputation medically equaled Listing 101.05(B), since the plaintiff required assistance with walking and was unable to perform age-appropriate activities. (Tr. 84–101, 363).

In 2014, the Social Security Administration performed a continuing disability review and determined that the plaintiff was no longer disabled, since he was "able to use his prosthesis without great difficulty" and could "participate in most age-appropriate activities." (Tr. 80). On December 3, 2014, the Social Security Administration notified the plaintiff that his child's SSI benefits would end in February of 2015, based on the agency's determination that the plaintiff was no longer disabled as of December 2014. (Tr. 102–03). The plaintiff sought reconsideration of the termination decision. On September 8, 2015, the agency notified the plaintiff that it was adhering to its determination that the plaintiff was no longer eligible for child's SSI benefits. (Tr. 143).

The plaintiff then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated June 9, 2016, the Law Judge also determined that

the plaintiff's disability ended as of December 3, 2014, and that the plaintiff has not become disabled again since that date. (Tr. 43). The Law Judge found that the plaintiff has suffered from several severe impairments since December 3, 2014, including right leg amputation, eczema, allergic rhinitis, and attention deficit hyperactivity disorder ("ADHD"). However, the Law Judge determined that the plaintiff's previously disabling impairment has improved, and that none of the plaintiff's conditions, either individually or in combination, has met or medically equaled the severity of a listed impairment since December 3, 2014. (Tr. 19, 26). The Law Judge also considered each of the six functional domains for the period since December 3, 2014, and concluded that the plaintiff has experienced "less than marked" limitations in each domain. (Tr. 38–42). Thus, the Law Judge found that the plaintiff has not had an impairment or combination of impairments that functionally equals a listed impairment since December 3, 2014. (Tr. 27). Accordingly, the Law Judge concluded that the plaintiff was no longer disabled as of that date. (Tr. 43). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, the plaintiff has now appealed to this court.

A child is disabled within the meaning of the Social Security Act if he has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Under the applicable regulations, the determination of whether a child meets this definition is determined via a three-step inquiry. 20 C.F.R. § 416.924. The first determination is whether the child is working and performing substantial gainful activity. Id. § 416.924(b). If the child is not working, it must then be decided whether the child suffers from a severe impairment or combination of impairments. Id. § 416.924(c). If the child suffers from a

severe impairment or combination of impairments, it must then be determined whether the child's impairment(s) meet, medically equal, or functionally equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. § 416.924(d).

To determine whether an impairment is functionally equivalent to a listed impairment, the Law Judge evaluates its severity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. § 416.926a(b)(1). Functional equivalence exists if the Law Judge finds a "marked" limitation in two areas of functioning or an "extreme" limitation in one area of functioning. Id. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." Id. § 416.924a(e)(2)(i). A "marked" limitation "also means a limitation that is 'more than moderate' but 'less than extreme.'" Id.

As previously noted, the court referred the case to a magistrate judge for a report setting forth findings of fact, conclusions of law, and a recommended disposition. In his report, the magistrate judge recommended that the court affirm the final decision of the Commissioner terminating the payment of child's SSI benefits to the plaintiff. Succinctly stated, the magistrate judge determined that substantial evidence supports the Law Judge's finding that the plaintiff's right leg amputation has not met or medically equaled Listing 101.05(B) since December 3, 2014. The magistrate judge likewise determined that substantial evidence supports the Law Judge's finding that the plaintiff has had "less than marked" limitations in all six areas of functioning since December 3, 2014, and thus has not had an impairment or combination of impairments that functionally equals a listed impairment since that date.

In the objections to the report and recommendation, plaintiff takes issue with the magistrate judge's findings as to four of the issues raised in the plaintiff's motion for summary judgment. The first issue is whether the Law Judge erred in finding that the plaintiff's right leg impairment has not met or medically equaled Listing 101.05(b) since December 3, 2014. A claimant meets or medically equals this Listing with the amputation of "[o]ne or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, . . . which have lasted or are expected to last for at least 12 months." 20 C.F.R. § 404, Subpart P, App'x 1, 101.05. The inability to "ambulate effectively" is defined as "an extreme limitation of the ability to walk." Id. at 101.00(B)(2)(b). "Older children, who would be expected to be able to walk when compared to other children the same age who do not have impairments, must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out age-appropriate activities," and they "must have the ability to travel age-appropriately without extraordinary assistance to and from school." Id.

The Law Judge found that since December 3, 2014, the plaintiff has not experienced stump complications resulting in "12 months (actual or expected) of inability to ambulate effectively." (Tr. 20, 26). The court agrees with the magistrate judge that the Law Judge's finding is supported by substantial evidence. In June of 2014, the plaintiff's second grade teacher noted that the plaintiff "moves better than most of the other kids" and that he "runs and jumps" with "lots of energy." (Tr. 286). The plaintiff's grandmother subsequently reported that the plaintiff enjoys skateboarding and playing soccer and basketball. (Tr. 655–56). On March 27, 2015, a state agency physician found that "there has been significant medical improvement" and that the plaintiff's right leg amputation does not meet or medically equal a listed impairment. (Tr. 411, 416). During an October 12, 2015 examination at Shriners Hospital, the plaintiff showed "good

5

range of motion through the hip" and was found to be "doing well" overall, even though he had been wearing his "smaller broken prosthesis."[2] (Tr. 536). Although the plaintiff was prescribed a wheeled walker approximately two months before the administrative hearing due to a "skin irritation" (591), the Law Judge reasonably concluded that "the record does not establish an inability to ambulate effectively that has lasted or is expected to last for at least 12 months." (Tr. 19).

In arguing to the contrary, the plaintiff emphasizes that he has been treated for eczema since 2014, and that his skin problems therefore "did not suddenly arise shortly before the ALJ hearing." Pl.'s Objections 2, Dkt. No. 22. While this may be true, the record amply supports the Law Judge's determination that the plaintiff's complications from eczema did not prohibit him from ambulating effectively during most of the relevant time period. Indeed, when the plaintiff first presented for an evaluation of his eczema on September 10, 2014, he exhibited "normal range of motion" and primarily complained of dry, itchy skin on his "arms and neck." (Tr. 423). Three months later, the eczema was found to be "well controlled" and "much improved on his skin care plan." (Tr. 433, 435). The same was true in March of 2015, when the plaintiff's skin was found to be "normal," with "no rashes or lesions." (Tr. 453). Likewise, in August of 2015, the allergist noted that the plaintiff's "eczema has been under good control" and that "his skin is much improved." (Tr. 570–73). Although the plaintiff complained of increased itching in December of 2015, less than three months before the administrative hearing, the plaintiff nonetheless exhibited normal range of motion. (Tr. 579–81). Because the itching primarily affected the plaintiff's ability to "sleep," the allergist recommended that the plaintiff apply Vaseline gauze to his stump "at bedtime." (Tr. 579, 582). In sum, the court is convinced that substantial evidence

---

[2] The examination notes indicate that the plaintiff was directed to "go to Sprinkle Prosthetics today to make sure that his new prosthesis, that was fabricated in May 2015, is fitting appropriately so he can transition to this one." (Tr. 536).

supports the Law Judge's conclusion that the record fails to establish an inability to ambulate effectively for a period of at least 12 months. Accordingly, the plaintiff's objection as to the right leg issue is overruled.

In his second objection, the plaintiff argues that the magistrate judge erred in concluding that substantial evidence supports the Law Judge's determination that the plaintiff has experienced a "less than marked" limitation in the area of attending and completing tasks since December 3, 2014. In this functional domain, the Law Judge considers how well the claimant is able to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs his activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h). The regulations provide that school-age children should be able to follow directions, remember and organize their school materials, and complete assignments. Id. § 416.926a(h)(2)(iv). They should also be able to concentrate on details, stay on task, and sustain their attention well enough to read by themselves, participate in group sports, and complete chores. Id.

The court agrees with the magistrate judge that the Law Judge's assessment of this area of functioning is supported by substantial evidence. In June of 2014, the plaintiff's second grade teacher rated the plaintiff as having either no problems or only slight problems in the domain of attending and completing tasks, and noted that the plaintiff "takes medication that helps him focus." (Tr. 284). During a subsequent psychological evaluation, the plaintiff's grandmother reported that the plaintiff's prescription for Adderall proved "very helpful in improving his attention, decreasing hyperactivity and impulsivity," and that, when taking such medication, the plaintiff's ADHD symptoms were "mild in the classroom." (Tr. 658). The plaintiff's grandmother also reported that the plaintiff was doing well in third grade, that he was capable of

7

independently performing chores, and that he could sustain concentration long enough to watch a movie and read a five-minute book. (Tr. 657–58). Similarly, during the administrative hearing, the plaintiff testified that he was doing well in fourth grade, that his favorite subject was reading, and that he did not have any problems reading his favorite book series. (Tr. 55). The Law Judge's assessment of the plaintiff's ability to attend and complete tasks is also supported by the findings of the state agency consultants, both of whom opined in March of 2015 that the plaintiff has a "less than marked" limitation in this area of functioning. (Tr. 374, 413).

In the pending objection, the plaintiff argues that "he has experienced significant issues with eczema affecting his prosthesis since September of 2014," and that the Law Judge "ignored evidence from plaintiff's fourth grade teacher, Ms. Hoyt, that plaintiff's itching and pain from his eczema and prosthesis frequently interferes with his ability to attend and complete tasks." Pl.'s Objection 3. Upon review of the record, however, the court is constrained to conclude that this objection is without merit. As the Law Judge noted in his decision, "the treatment history discussed above shows that these physical symptoms are intermittent and variable," and that they generally improved under the skin care plan prescribed by the allergist. (Tr. 39). Although Ms. Hoyt reported that the plaintiff would "often" ask to visit the school nurse or the restroom to scratch his leg (Tr. 295), the Law Judge did not ignore the teacher's letter. Instead, the Law Judge's decision confirms that he reviewed the contents of the letter and determined that it was not entitled to considerable weight since it was "vague as to the frequency of the claimant's prosthetic-related interruptions." (Tr. 28, 35). The Law Judge also emphasized that "[a] review of the notes kept by the school nurse suggests that the actual frequency [of nurse visits] was rather low." (Tr. 35–36). Indeed, the notes reflect that the plaintiff visited the nurse approximately four times between January 2015 and February 2016 for complaints related to itching or his

8

prosthesis, and that most of his nurse visits were for issues completely unrelated to eczema or the prosthetic device.[3] (Tr. 588–589). For all of these reasons, the court is convinced that the Law Judge's assessment of the plaintiff's ability to attend and complete tasks is supported by substantial evidence and that the plaintiff's objection must be overruled.

In his third objection, the plaintiff argues that the magistrate judge erred in concluding that substantial evidence supports the Law Judge's determination that the plaintiff has experienced a "less than marked" limitation in the area of moving about and manipulating objects since December 3, 2014. In this domain, the Law Judge considers how a claimant moves his body from one place to another and how he moves and manipulates things. 20 C.F.R. § 416.926a(j). The regulations further provide that a school-age child's "developing gross motor skills should let [the child] move at an efficient pace at school, at home, and throughout [his] neighborhood. Id. § 416.926a(j)(2)(iv). A school-age child's "increasing strength and coordination should expand [the child's] ability to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports." Id.

The court agrees with the magistrate judge that the Law Judge's assessment of this area of functioning is supported by substantial evidence. In June of 2014, the plaintiff's teacher rated the plaintiff as having either no problems or only slight problems in the domain of moving about and manipulating objects, and expressly noted that the plaintiff could move "better than most of the other kids." (Tr. 286). During the subsequent psychological evaluation, the plaintiff's grandmother reported that the plaintiff enjoyed playing several sports, including soccer and basketball. (Tr. 656). At the most recent visit to Shriners Hospital, the plaintiff exhibited "good range of motion through the hip" and was found to be "doing well" overall. (Tr. 536).

---

[3] For instance, on several occasions, the plaintiff presented to the nurse with complaints related to his orthodontic braces. (Tr. 599–601).

Moreover, during the administrative hearing, the plaintiff testified that he runs and plays dodgeball during gym class, and that the only activity that he is unable to do is "jump rope with two feet at the same time." (Tr. 59). Instead, the plaintiff jumps rope with one foot. (Tr. 59). The Law Judge's assessment of the plaintiff's ability to move about and manipulate objects is also supported by the findings of the state agency consultants, both of whom opined in March of 2015 that the plaintiff has a "less than marked" limitation in this area of functioning. (Tr. 375, 414).

In the pending objection, the plaintiff suggests that the Law Judge ignored a February 11, 2016 letter from the plaintiff's physical education teacher, which indicates that there have been "several instances" when the plaintiff's prosthesis has caused him discomfort or prevented him from participating and that the plaintiff's prosthesis has fallen off on "more than one occasion in the last two years." (Tr. 297). However, a review of the Law Judge's decision confirms that the Law Judge considered the letter and found that it was not entitled to considerable weight since it was "very vague as to the frequency of the claimant's prosthetic-related interruptions." (Tr. 35). Based on the totality of the evidence, including the records from Shriners Hospital and the plaintiff's own testimony, the Law Judge found that the plaintiff "can still do many activities both in and out of school, despite some limitations from his prosthesis." (Tr. 36). Upon review of the record, the court is satisfied that substantial evidence supports the Law Judge's conclusion that the plaintiff has experienced a "less than marked" limitation in the area of moving about and manipulating objects. Consequently, the court must overrule the plaintiff's third objection.

In the plaintiff's fourth and final objection, the plaintiff argues that the magistrate judge "erred in concluding substantial evidence exists to support the ALJ's determination regarding plaintiff's allegations." Pl.'s Objections 6. Although the plaintiff's grandmother testified that the plaintiff "cannot run . . . or even walk" with the prosthesis and that he has problems at school

"every day" (Tr. 68, 71), the Law Judge found that such statements regarding the intensity and limiting effects of the plaintiff's symptoms were "not consistent with the evidence for the period since December 3, 2014." (Tr. 35). The Law Judge emphasized that the notes from the school nurse indicate that the prosthetic-related interruptions have been far less frequent than the plaintiff's grandmother suggested. (Tr. 35). The Law Judge also noted that the most recent examination notes from Shriners Hospital were consistent with the plaintiff's own testimony that he did not begin using a wheelchair until a few months before the hearing and was doing well with the prosthesis up until that point. (Tr. 36). Additionally, the Law Judge emphasized that the plaintiff testified that he could perform most of the same physical activities as his peers, with the exception of jumping rope using both feet. (Tr. 36). The plaintiff's testimony in this regard was consistent with the observation by his second grade teacher that the plaintiff could run, jump, and move as well as other children. (Tr. 286).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. The court agrees with the magistrate judge that the Law Judge's assessment of the witnesses' testimony is supported by substantial evidence. Accordingly, the court must overrule the plaintiff's final objection.

In sum, after a de novo review of the record and for the reasons set forth above, the court is constrained to conclude that the final decision of the Commissioner is supported by substantial evidence. Accordingly, the plaintiff's objections to the magistrate judge's report are OVERRULED, the magistrate judge's recommendation will be ADOPTED, and the final decision

of the Commissioner will be AFFIRMED. See Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.[4]

The Clerk is directed to send certified copies of this memorandum opinion to the plaintiff and all counsel of record.

DATED: This 26th day of March, 2019.

/s/ B. Conrad
Senior United States District Judge

---

[4] The court notes that if any of the plaintiff's conditions have progressed or worsened since the Commissioner's final decision, the plaintiff may reapply for child's SSI benefits.